Kirkpatrick C. J.
This is a writ of dower, unde nihil habet. It claims for the demandant the one equal third part of 500 acres of land situate in Upper Freehold, in the county of Monmouth, as her reasonable dower of the endowment of her late husband, William Montgomery, deceased.
When the cause was carried down to the circuit for trial, the following state of the case was made by the parties, and is now submitted to the consideration of the court. (See case.)
Upon this state of the case, it is evident that William, the second, upon the death of his father William, the first, entered into and took possession of the said 500 acres of land without lawful right, he being neither the heir general nor the heir in tail under the settlement. This possession, thus acquired, was strengthened, as to the *298 moiety of the lands contained in the deed of settlement, the release of 1762, made to him by his brother Robert, wj10 js admitted in the case to have been both the heir general' and the heir in tail; but still all the estate he could have therein was liable to be defeated, as to one moiety, by the entry of the right heir of William, the first, and as to the other moiety, by the next heir in tail after the death of Robert, his elder brother. No such entry, however was made, but he continued in possession of the whole 500 acres, taking the rents, issues and profits thereof to his own use, until the time of his death, which was in the year 1771, a period of more than ten years.
Upon the death of William, the second, William, the third, who was his heir at law, and also his devisee in fee of the said premises, entered into the same and was possessed thereof in *like manner, taking the rents, issues and profits thereof to his own use, until the 15th February 1785; when the same were sold- by the sheriff of the county of Monmouth to one David Forman, under whom, by sundry mesne conveyances, the present tenant now holds.
After this statement, I will not give myself the trouble to inquire more particularly respecting the title of William, the third, the husband of the demandant, in the said 500 acres of land; for it is'a clear principle, that he who comes in and holds under the husband, as heir or alienee, can never question his title in order to defeat the dower of the widow; (a) and it is also a clear principle that such heir or alienee can never set up a latent title unaccompanied with possession, purchased in for that purpose. Besides, if the heir or alienee were permitted to question the title of the husband, and to give in evidence such latent title purchased in to protect him against the dower, it would not help him in this case; for though it should appear that the husband were seized of a defeasible estate only, as by abatement, discontinuance, or other species of ouster, yet the wife is entitled to her dower until such estate be defeated; nay, even if the husband were in by disseisin, which is a direct *299 attack upon him who is in the actual possession, and a turning of him out of it, yet the wife is entitled to dower until the disseisin be avoided in due form of law. And if this be so in the case of the wrongdoer himself, it is much more so in the case of the heir or alienee who comes into possession by regular descent or by lawful conveyance, as is the case before us. I shall therefore consider William, the third, for the purpose of dower, as being seized, though perhaps of a defeasible, yet of an unconditional and unlimited estate of inheritance, wholly independent of the deed of settlement and the trusts therein created.
If the cause therefore depended upon the question, whether William, the third, wTas at any time so seized] of the said 500 acres of land as that his wife could bo endowed thereof, I should see nothing in the way of her recovery. But the deficiency of the title of the husband, though mentioned in the argument at the bar, is a point not much insisted upon.
The material question arises upon the mortgage to Bru&re, and the circumstances attending it.
^Before we look into this, it may be proper to inquire of what the wife is dowable in New-Jersey; for it has been urged at the bar that our act upon this subject has introduced new principles, and has placed the doctrine of dower upon a different foot from that upon which it stood at the common law. Let us look into this. By the act of January 31, 1799, entitled “An act concerning dower,” it is enacted “that the widow shall be endowed of all the lands, tenements and other real estate, whereof her husband, or any other to his use, was seized of an estate of inheritance at any time during the coverture, to which she shall not have relinquished her right,” &c. Now if we give this act a strict construction, according to its words, perhaps it may be true that it has introduced a new principle; for it is easy to conceive, and indeed the books give us many cases where the husband may be seized of an estate of inheritance during the coverture, and yet the wife will not be entitled to dower. By the common law, the husband must not only be seized of an estate of inheritance, but *300 of such an estate of inheritance whereof any issue which wife might have had, might by possibility have been heir; and this last requisite is not embodied in our act. But this is not the new principle upon which the counsel for the demandant insist as making in their favour. They say the act has introduced another new principle, and, contrary to the rules of the common law, has given dower not only in the lands &c. whereof the husband was seized, but also of the lands whereof any other was seized, to his use during the coverture; and this use to which any other was so seized, they construe to be what is commonly called a trust; for they say that when lands are conveyed to one for the use of another, the statute executes the use, so that the cestui qui use becomes actually seized thereof in as full and ample a manner as if the same had been passed to him by lively of seizin ; that a husband therefore, to whose use lands are so conveyed, is himself, in contemplation of law, actually, seized; and so when the act relative to dower, speaks of another being seized to the husband’s use, it must mean something different from that kind of use which the statute thus executes, otherwise the provision would be wholly nugatory, for of such a use the wife was dowable before; and this something different which the act means, they say, can be nothing else than what is *now usually denominated a trust, that is a use which the statute cannot execute.
But this reasoning, however ingenious, cannot prevail. For, in the first place, in the construction of statutes, we must take words and phrases according to their common acceptation in the language of the law. and it is well known that for two hundred years and more, a use and a trust have been considered as different things, and have been used to express different interests and different estates ; and in the second place, our act for transferring uses into possession is widely different from, and much less extensive in its phraseology than the 27 Ii. 8. It says, “ the person to whom the use is conveyed shall be in as full and ample possession as if he were possessed by solemn livery of seizin and possession; but it does not like the 27 H. 8, say he shall stand and be seized, &c.; it speaks of possession, not seizin. A doubt then might reasonably arise in the mind *301 of tí 10 penman of this act concerning dower, whether the cestui qui use, under our act for transferring uses into session, was so seized as that his wife should he dowable of the estate; and in order to obviate that doubt, his prudence and caution led him to adopt the phraseology which he has used. We conclude then, that our act of 1799 leaves the doctrine of dower, in this respect, precisely where it found it, and precisely where it stood at the common law as altered by the 27 II. 8.
The case then will present the simple question, whether the wife shall be endowed of an equity of redemption? I say it will present this simple question ; for though some circumstances have been brought forward in the argument to render it more complicate, a little consideration will abundantly remove them out of the way.
In the first place, it is said that the bond to Peter Bruere, never was assigned or transferred to David Forman, or those holding under him ; that the mortgage for securing the payment thereof, was assigned only by writing endorsed without seal, and that by the executor without probate of the will, which is void; that therefore neither David Forman nor those holding under him have any interest either in the money due upon the bond, or in the lands mortgaged for securing the payment thereof; and that having no interest they can never set up the same to bar the widow of her dower, for that as to them it must be considered as *a satisfied mortgage. But the answer to this is altogether satisfactory. The executor has the substantial interest in the mortgage, and he may receive the money due upon it and assign or transfer it before probate as well as after, and certainly he may do this without seal. But even if the form and manner of the assignment wore defective, yet still the answer is conclusive. David Forman purchased up this debt and paid his money for it. This is abundantly evident from the writings having been delivered over to him; from the mortgage, which was the only security (for Montgomery seems to have been insolvent) having been assigned to him; from the assignment expressing the transaction and setting forth the consideration; and from all these having been found in his scrutoire after his death. Whether *302 therefore the assignment carried the estate of the mortin the iand or not, is wholly immaterial; for wherever the legal estate may be, it is but a trust for him who hath the right to the money. And surely it will not be said that the cestui qui trust cannot set up the legal title in his trustee in his defence.
Again. It has been said that this ought to be considered as a satisfied mortgage, from the length of time it has lain without payment of interest or any demand made upon it. (a) The mortgage was dated July 1777, and it is admitted in the argument, though not contained in the case, that an action having been instituted upon the bond, a verdict was rendered thereupon in July 1783, and a judgment entered in September following; and that an execution was'immediately taken out and levied upon this land, by virtue of which it was afterwards sold, as the case says, and purchased in by David Forman, who had before purchased the debt and taken an assignment of the mortgage. When it is considered that this loss of time, from the date of the bond till the commencement of the suit upon it, was during the revolutionary war, when the courts of justice, and especially in the county of Monmouth, were in a measure closed, it will hardly be contended that it affords the slightest presumption of payment; (b) and even if it did, the verdict and judgment are certainly conclusive against it. Then how does it stand after the sale ? The equity of redemption arid the title of law having come together in the same hands, are again united, and become one unconditional estate in fee-simple. The bond and mortgage are satisfied by taking the pledge for the debt. Of whom then could "“interest have been demanded ? What further proceeding could have been had upon them ? Certainly none. But then it is said again, that if the mortgage be satisfied, it is contrary to the rules of law that it should be set up in bar of the widow's dower. This may be true when the satisfaction is by the payment of the money, or otherwise, so that the condition of the mortgage is performed, and the mortgagor or his heir is *303 in again of Iris former estate ; but can it possibly be said, that when the mortgage becomes satisfied by thomort-— gageo’s taking the mortgaged premises for the payment of his debt, and when, of course the mortgage is the very title by which he holds his land, that it shall be called a satisfied mortgage in such sense as that the mortgagee shall not set it up in his defence ?
'The question then recurs, unembarrassed by the particular circumstances of this case, whether the wife be dowable of an equity of redemption on a mortgage in fee.
In considering this question, we must remember that we are in a court of law, investigating a legal, and not an equitable right. I make this preliminary observation because much has been said about the nature of a mortgage in the contemplation of a court of equity, and about the mortgagee’s being considered in that court but as a mere trustee for the mortgagor.
It is true that the courts of equity have raised up a system of their own upon the subject of mortgages, in derogation of the doctrines of the common law. From what sir E. Coke says in his chapter upon that head, we are taught that a mortgage was considered as creating a conditional estate at the common law, strictly speaking, defeasable only by the performance of the condition at the day, and not as merely putting the land in pledge or giving it by way of hypothecation for securing the payment of money. Hence we find, that in remoter times, if the mortgagor once suffered the condition to be broken, the estate was gone, and there could be no redemption even in equity. The extreme severity of this rule, however, in process of time induced the courts of equity to interfere, and to mould contracts of this kind into a shape more conformable to the intention of the parties, and more convenient for the purposes of society. With this view, they have proceeded from step to step until at last it lias been established, that the mortgage is but a mere pledge; that the mortgagor has still an actual estate in the mortgaged Hands ; that he has such an estate as may pass by descent, as may be granted, devised, entailed, and be the subject of a tenancy by the courtesy of Eng *304 land; and that as soon as the debt is discharged the of the mortgagee ceases of course, and he becomes, ag £0 £pe legal estate remaining in him, if any does remain, a trustee only for the mortgagor.
In conformity with those equitable principles, the common understanding now is, that'the mortgagor in possession whether before or after condition broken, is actually the tenant of the freehold; and accordingly it has been adjudged, that upon such freehold he may gain a settlement, he may be a juror, he shall be taken as bail or manucaptor, and, in this state, he may be a member of the legislature, or execute any other office or public function which by the law is granted to freeholders only. In short, he is considered as tenant of the freehold, for all purposes and in all relations of life, except such as concern the mortgagee.
But as to the mortgagee or those holding under him, even these courts of equity have left to him his legal estate with all its consequences, except only that they have subjected it to an equity of redemption after condition broken, and such other restraints as necessarily flow from that equity.
What then is a mortgage? It is a dqed whereby one grants to another lands, upon condition that if the mortgagor shall pay a certain sum of money or do some other act therein specified, at a certain day, the grant shall be void. Formerly this was a deed of feoffment, accompanied by actual livery of seizin; now it is usualty a deed of bargain and sale to the use of the mortgagee, which use is executed by the statute without such actual livery. By this conveyance the mortgagee becomes seized of the mortgaged lands, and the mortgagor, if he remains in possession, is a mere tenant at will, or rather quasi tenant at will, for he has not all the privileges of such tenant; and the estate having thus passed to the mortgagee in presentí, and being defeasible only upon a condition subsequent, the mortgagee may, at any time, even before the day of payment, enter upon the mortgagor, or bring his ejectment against him and turn him out of possession. But whether he make such entry or not, still the possession of the mortgagor being his possession, he *305 is tenant of the freehold ; the seizin is his, and it cannot be defeated hut by the performance of the condition. was formerly held, indeed, upon the strict ^doctrine of feoffments, that even the performance of the condition did not divest the estate, but that there must be a conveyanee. That strictness, however, is now disregarded, and upon the performance of the condition, at the day, the seizin of the mortgagee is considered as defeated, and the mortgagor as being in of his former estate. And since the statute, which makes payment after the day as effectual as payment at the day, it is presumed, and I believe it is the received doctrine, that the same consequence results from such payment; but until the condition he performed, in the one way or the other, the seizin is in the mortgagee.
Here the mortgage was before the marriage, seizin passed thereby from the husband to the mortgagee, the possession of the husband afterwards was not a seizin, but a mere possession only as tenant at will to the mortgagee, or less than tenant at will. All that was left to him was his equity of redemption.
Now, though upon this equity of redemption, there has been built up quite a system of rights in favour of the mortgagor, yet still it is to be considered that this system, so far as goes to the right of granting, devising, entailing, or otherwise disposing of the mortgaged premises, or of claiming a tenancy by the curtesy in the same, is a mere creature of the courts of equity, and may be ultimately resolved into the right of redeeming itself, for it is no more than extending that right to the alienee of the mortgagor; and that therefore whosoever would set up his claim against the mortgagee under that system, must go into those courts. Whether then we consider this claim of dower as founded upon the equitable seizin, as it is called, of the mortgagor, or upon the legal seizin of the mortgagee as his trustee; a court of equity is the only tribunal which can give relief. Por suppose for a moment, that in circumstances like the present, the wife were dowable, will it be said that she is to oust the mortgagee of his pledge, and take the third part of the land exonerated from the incumbrance ? if not, can this court *306 order her to redeem ; can they settle the proportions to be by the respective claimants, or give a judgment on terms ? they cannot.
But suppose it were otherwise, and the demandant were rightly in this court, or were in a court of equity itself, still she cannot recover. To entitle the widow to dower, the husband must have been seized either in law or in fact; he must have had a *legal seizin; what the courts of equity call an equitable seizin will not do. That this was the original common-law doctrine cannot be denied ; it is recognized in all our books; it is recognized, nay, I may say it is established by the parliament themselves, especially in the preamble to the statute of uses. Iiave the courts of equity then, in building up .their system upon this right of redemption in later times, broken down this principle of the common law, and let in the widow upon what they now call an equitable seizin of the husband ?
In the argument at the bar, the case principally, if not wholly relied upon in favour of this position, is that of Banks v. Sutton (2 P. Wms. 700) decided in 1732. In this case the Master of the Rolls entered into an argument which seems to favour that side of the question, yet even there, though he lets the widow in to redeem, his opinion is ultimately founded upon a distinction which excludes this case from .its operation. But besides this, that case was immediately overruled by subsequent decisions to which it is needless to refer; and the whole course of authority from that time till this, has been the other way. In the case of Burgess v. Wheat in 1759, (1 Black. 123) lord Mansfield enters very largely into tjie origin and nature of trusts, and takes that side of the question which gives them their greatest force. He says, a trust is considered in equity as a legal estate, and is governed by the same rules as all real property is in the courts of law; that whatever would be the rule of law as to the legal estate will be applied in equity to a trust estate. He goes further and gives his assent to what had been said by lord Hardwicke in another case. That in the eye of a court of equity, the equity of redemption is the fee-simple of the land, that it will descend, may be granted, devised, *307 entailed, and that therefore it must be an estate, whereof, in the consideration of that court, there may be a for that without such seizin a devise of it would not be good; in short, that the forum in which it is to be judged is the only difference between the equity and the land. And yet he admits that with respect to dower, the law had been settled; that whatever the reason of the thing might have been, it had been held that it was then too late to break in upon a principle so well established, upon which so much depended. The lord keeper and the master of the rolls who sat with him in that case, though they differed with him in some respects as to the nature of a *trust, yet fully concurred so far as respects the question now under consideration. From that time down to the present day, the course of adjudication has been uniform, and I believe I may say that there is not one case to be found in which there has been given to the widow her dower, in an equit3r of redemption on a mortgage in fee made b3r the husband before marriage.
I am of opinion therefore, that there be judgment for the defendant with cost.
Rosselh J.
So much of the state of the above case as appears to me to be necessary to notice on the question before the court, is as follows:— William Montgomery, named the third in the state of the case, being in possession of a large farm in the county of Monmouth, mortgaged the same in 1777, in fee for £700 and soon after married the present demandant. William continued in possession of the premises until the year 1785, when they were sold by the sheriff of Monmouth county, by virtue of sundry judgments and executions, and finally came into the possession of the present defendant. The widow of William Montgomery now demands dower in the lands ; and the simple question is, is the widow of a mortgagor in fee before marriage, entitled to dower in an equity of redemption ? I believe that many cases can be shewn of decisions in our sister states, answering this question in the affirmative, and in England the hardships and injustice of excluding widows from dower in an equity of redemption, has been long felt and acknowledged. It was in *308 direct contradiction to a rule that dower was a favourite the law, yet it was said to be too firmly established by precedent to be broken in upon, and until the case of Banks v. Sutton, in (2 P. Wms. 700) perhaps no case can be shewn before 1776, where the widow of a mortgagor in fee recovered her dower.
That case is thus noticed in Powel on Mortgages, 320. A wife is not entitled to dowrer out of the equity of redemption of a mortgage in fee. Although this rule was attempted to be broken through in the case of Banks v. Sutton, by sir Joseph JeJcyl, yet in a later case by the lord commissioners of the great seal, that decision was overruled, and as a general position held not to be law, and that it did not impugn the general principle that the wife of a mortgagor is not entitled to dower, but ivas an ex*ception of that general rule as falling under another and distinct principle of equity. In 3 P. Wms. 232, Banks v. Button, is again cited, and a similar conclusion drawn, and it is said to have been settled on the peculiar circumstances of that particular case. Other authorities also notice this case and hold the same opinion respecting it.
But it is contended on the part of the demandant that as the defendant claims under her husband, he is estopped to deny the seizin of the husband. That he is estopped to deny the right of William Montgomery, such as it was, is certainly true; but surely contending that the widow of William is not entitled to dower, cannot be construed into a denial of his right to the premises: this was all they did or could purchase. And the rights of the widow, under all the circumstances of the case is the subject in dispute, and as I apprehend, has nothing to do with tíre doctrine of estoppel.
The simple question before the court, is, what was the right in this land, mortgaged in fee by William in 1777, to which the demandant was entitled on her marriage with William, the same year. The law, as it then stood, must control the opinion of the court, however they might be inclined by the nature of the claim, the hardship of the case, or the general principle that dower is favoured in the law, to wish it was otherwise; each of the parties litigant is entitled to all the benefits arising *309 under that law, and to suffer all the inconvenience that might possibly be occasioned by it. This court change the obligations and riglxts of the parties actually subsisting at that time. It will be seen that I am of opiixion that the dexnandant is not entitled to recover; and it will not be necessary for me to examine another point raised, as to what part William, the husband, held in these premises.
Southard J.
The demandant claims her dower in 210 acres, part of a tract of 500 acres of land in Upper Freehold in Monmmiih county. Her husband, William Montgomery, the third, claiming title as heir and devisee of W Montgomery, the second, entered into possessioix of the premises in September 1771, and continued to possess the same and receive the profits to his own use, for something more than thirteen years, viz. uixtil February 1785, when they were publicly sold by the sheriff of * Monmouth and purchased by the agent of Gen. David Forman. The defendant derives his title from the sheriff’s sale through Gen. Forman, by a regular chain of legal conveyances, through several persons, in whom it was at different periods vested. William Montgomery, the secoxid, under ■whom the husband took as heir aixd devisee, was in possession about ten years, claiming the same as his own, and receiving the profits to his own use. For a moiety of the land, he had a release from his brother Robert, who was the heir at law and devisee in tail of the whole premises ; which were subject to a legal and regular entailment in him and his heirs male.
Upon the case, thus far exhibited, several remarks seem to arise.
1. The demandant’s husband does not seem, for all purposes, to have had a full, perfect, and indefeasible title to the premises. His title to one half, at the time of the sheriff’s sale, depended upon a possession and receiving the profits to their own use, by himself and his father, for twenty-three years; a possession which did not, at that time, give him a full title. For the other half, he had the same possession, with a release, from the then heir in tail; a release binding only during the life of the relessor. *310 The title and possession, therefore, of the husband in one half of the premises, might have been defeated by the entry of Robert, the then heir in tail; and in the other half by the entry of the heir in tail next to Robert.
2. Although the husband’s title might have been thus defeated, yet his seizin was such as to authorise the widow to claim her dower, so long as it remained undisturbed by the heir in tail: and no entry or legal claim by that heir, having been made, her right is, on that ground, without exception. And
3. A purchaser of land at sheriff’s sale, comes into the place of the defendant and holds as if by deed from him, the sheriff being merely the agent of the law to transfer the title, (a) The tenant therefore claims title under the husband, and cannot deny his seizin. Coze 437, 452. 1 Caines 185. 7 John. 282. 6 John. 293. 10 John. 293, 441. Bacon, title Dower. Penn. 800. Upon this case, thus far, no doubt is perceived. The widow seems clearly entitled to her dower. But there are other facts which are supposed to invest it with additional difficulty, and take away her right.
*She was married on the 15th of January 1778, previous to which time, viz. on the 29th of July 1777, her husband executed to one Peter Bruere, a bond for the payment of £700, together with a mortgage in fee on the premises. In September 1783, a judgment was rendered on this bond, in favour of the executors of Peter Bruere. About the same time, (whether a little before or a little after the judgment, is not explained) the executor, who appears never to have proved the will or taken out letters testamentary, made an endorsement on the mortgage, without seal, to Gen. Forman, who afterwards in 1785, bought the place at sheriff’s sale. The bond never was assigned to Forman, but was since found with the mortgage among the papers of his sole executor, W. G. Forman. At the sheriff’s sale, Gen. Forman forbid the sale and claimed the premises under an old mortgage executed in 1713, by William Montgomery, the first. All the conveyances, from Forman to Bruere, set out the title as derived from the husband, *311 through the sheriff’s sale, denying all other titles. This mortgage, so executed before the marriage, is said to created a title in Peter Bruere, which has come down to the tenant, and precludes the demandant from her claim. Upon these facts I make the following remarks.
1. The deed from the sheriff to Forman, and all the deeds from Forman down to the tenant, are silent as to any claim under this mortgage; expressly exclude all other claims of title from other sources ; and set out the title of the husband at the time of the sale, and that alone, as the one under which the grantors hold. The tenant therefore, makes his title under the husband, during the coverture, not before it. His deeds claim the title during the coverture as sufficient and full. Shall he then be permitted to say, that lie has derived another title under the husband, which defeats this? Shall he setup the husband’s seizin during the coverture for every purpose and against every person, until the widow makes her claims, and then deny that seizin; and to defeather, setup another which is repugnant to it? It cannot be.
2. If this bond and mortgage were not so assigned to Forman as to vest in him the legal and equitable rights of Bruere, the original mortgagee, the tenant can have no interest under the mortgage nor avail himself of this defence. He derives all his rights to the bond and mortgage, under Forman, by means of the transfer of the land alone : he never received an assignment or even ^delivery of them, nor ever made any use of them or claim to them, until the dower came in question. All the benefit which ho can in any way receive from them, is that which attached to the land while in .Forman’s hands. If therefore, they were not so assigned as to relieve the land and strengthen the title, at that time, they are of no use to him: they form an outstanding claim of title, which he cannot interpose as a bar to dower. A mortgage before entry and foreclosure, can only be used or set up in this way by the mortgagee and his representatives, not by a stranger to it. 7 John. 282.
3. The legal, perhaps the equitable right to this bond, never was vested in Forman. For this purpose an assignment was necessary; a mere handing over of the paper, *312 and that too, possibly after its discharge, was not enough. is the possession of it by his executor, proof of such transfer to him. Now without such transfer, the mortgage could not be legally assigned. The mortgage is a mére security for the payment of the bond ; it receives its life from it, and when it is discharged, it expires of course. It exists by it and with it, and cannot be separated from it or assigned without it.
4. If this mortgage be a mere chattel interest, and convey not the legal title, it cannot avail the tenant in his defence. If it do contain the legal title to the estate, it must be transferred in some known mode of transferring titles and by some person having the interest in him and legally empowered to assign it. An executor who has a co-executor, and who has never proved the will nor received the letters testamentary, is not authorised to convey the title to real estate; and a mere endorsement without seal, from him, will not avail to cure the defect. It would seem, therefore, in whatever light we view this mortgage, that it is certain that it never was legally vested in Forman so as to enable him to Convey legal rights under it, or relieve the land. It is said, howTever, that having paid his money for it, to secure and protect his own title, wherever the legal title may be, the equitable right is in him; and as cestui qui trust he may use, the title of his trustee to defend his possession. Without adverting to the doubt, whether such an equitable right can, in this way, be set up as a bar to dower, I remark, that I cannot, on this part of the case, free myself from some question, as to the fact, that Forman did pay this money and acquire this right. 'There seems no conclusive *documentary or other proof, that he did so. What is the proof? The possession of the bond and mortgage by his executor? This is a very inconclusive species of evidence ; the fact may have happened from a variety of other causes. Is it.from the endorsement on the mortgage? This purports to have been made on the 4th of August 1783, when he could not have had the bond. It was in suit in the name of Bruerés executors, and a verdict shortly before had been rendered upon it. It soon after passed in rem judicatam; a judgment followed *313 the verdict; but he did not discharge it, for a sale was subsequently made to satisfy it. When then did he pay Is the proof derived from the presumption, that he bought and took up the mortgage, to free the title which he obtained at the sheriff’s sale ? Dates seem to contradict this supposition. The endorsement on the mortgage is made eighteen months before the sheriff’s sale; before he could have known that judgment would be liad, a sale take place and he oe the purchaser. Besides, his notice at the sheriff’s sale, proves that he either then had no interest in the bond and mortgage, or did not rely upon it. I am therefore strongly inclined to the opinion that Forman never had either a legal or equitable interest in- this mortgage, which could operate upon the estate in this land ; and that it can only be considered as an outstanding title which the tenant cannot use. If it be not so, he ought to have removed our doubts and should not have permitted the inference to be against him.
But if, on this subject, there is not that room for doubt which I have apprehended, what will be the result ? If the defendant have a perfect right to set this up as a valid and existing mortgage in his own hands, then he relies for complete protection upon the principle, that a widow cannot have dower in lands, on which her husband had executed a mortgage in fee, previous to the coverture.
I am aware that this doctrine is laid down in most explicit terms by elementary writers; is considered as settled law at this day, in England ; and that my brethren both hold it to be well settled here. Under these circumstances, nothing but a conviction, upon which doubt did not rest, would induce me to avow a contrary opinion, the grounds of that opinion it is my duty to explain.
The great object of inquiry on this subject, is, where was the *lcgal seizin of the land at the marriage? in the mortgagor or mortgagee ? It is the legal seizin which is the object of search, because that is subject to dower. However strong may be the light, in which the estate of the mortgagor is viewed in the courts of equity, that light, although it may direct to the reason and justice of the claim, will not govern the decision of this court. We give *314 dower in lands, in which we find' the legal seizin. But that seizin' is found, it must be subjected to all legal consequences and incumbrances. We are not to maintain it for one purpose and deny it for another; to toss it backward and forward as may suit the convenience of the tenant: at one time giving him all the benefits, at another freeing him from all the burdens, necessarily flowing from a full title.
This seizin if in the mortgagor before the mortgage was executed, must remain in him, or be transferred to the mortgagee. It must be found somewhere. Is it in the mortgagee ?
Originally mortgages were feoffments, conveyances of lands, from debtor to creditor, with condition that if the money was not paid at the day appointed, the lands became absolutely vested in the creditor, freed from the condition. Lit. sec. 332. The strictest maxims of the common law, respecting conditions, were applied to them. Even a subsequent tender of the money, did not avail the debtor ; he lost the land, no matter how high its value, or how small the sum which it was designed to secure. 5 Rep. 95, 114. This was so obviously unjust, that courts of equity interfered, and courts of common law have aided in the establishment of different doctrines. Since the reign of James I. the right of redemption has been fixed, so that the mortgagee can in no way .invade it, even by incorporating an agreement in the deed itself. 1 Ver. 33, 190, 138, 488. 2 Rep. in Gh. 221. 2 Ver. 520. Since that time, the mortgagee has had no certain and absolute estate in the land, until after foreclosure, and that is the creation of a new title, not the confirmation of an old one. 1 Atk. 603. Even if he recovers the possession by entry, or by suit, he holds not for himself by title; he must account to the last farthing for the profits, and his possession may be, at any moment, at the will of the mortgagor, terminated. 1 Ver. 476. 45. 2 Atk. 534. Pie cannot use it as his own ; he will not be permitted to do waste. Gro. Jac. 172. 3 Atk. 728. He cannot sell or lease so as to bind the mortgagor. 9 Mod. 1. He could *not even bar him by fine or recovery when they were in use. His estate is not at any time considered as real, but personal. 2 Ver. *315 401. It is a mere security, a mere charge on the land, and whatever gives the money gives all the estate he for every purpose. 2 .Bur. 9(59. ,
These doctrines though principally established in equity, operate completely at common law. A mortgagee is there, considered as a freeholder, for no single purpose of office, of benefit, or of burden. He can hold no public office; he can exercise no public duty requiring an estate inlands. He cannot gain a settlement; his property, is personal assetts in settling his estate; if he devises it, it will not pass by the words land or real estate, nor is it necessary, that his will be executed with the legal requisites to pass them. It is not subject to curtesy or dower, the necessary attendants upon legal estates in lands. Even a transfer of the debt, in any way, terminates it. 2 Bur. 969. It has not one single characteristic of a legal estate. It is a mere security for the money, and a power to gain possession of the land, in order to make it. Reeves D. R. 53. Shall we then say, that the seizin is in the mortgagee ? Because it was of old, so determined, when all legal consequences of an estate followed it, shall we still so determine, when not one legal consequence follows ? For the sake of an adherence to an old doctrine, shall we break down every legal reason, doctrine and distinction? 1 cannot doubt on this point. The seizin is not in the mortgagee. Tt must then be in the mortgagor, for, as it cannot be in both at the same time, it must be in one of them. As we fail to find any traits of the estate in the mortgagee, so we shall find every one in the mortgagor.
We are told in 1 Aik. 605, and Caines in Er. 66, that the estate of the mortgagor is such of which he may have seizin ; and we are told truly. His estate is never treated as personal; it is not so in settlements by administrators and executors, or in sales by sheriffs under executions; it is always treated as real; it might have been barred by fine and recovery; it will descend to heirs; may be devised and entailed; is always sold as legal real estate, under execution. It confers all the benefits of legal estate and seizin; mortgagor gains a settlement as tenant of the freehold, under the poor laws; he may be a juror; bail; sheriff; member of the legislature; may execute every *316 office, enjoy eve*ry benefit, ‘and must bear every burden to freeholders. It is impossible to find one quality of an estate, which is not attached to his, except the right of possession for a special purpose, and when that is taken from him the estate is not altered; he does not cease to be the owner, but is entitled to have all the profits used for the payment of his -debt, as entirely as if he were in possession; and may at any-moment restore himself to that possession, by the payment of the money, even against the will of the -mortgagor. Is he not then the owner ? has he not then the seizin ?
But again. Estates at common law pass by livery of seizin, or what is equivalent thereto ; and when passed, can be restored to the grantor, only by an act of equal validity. If then the execution of the mortgage transfers ■the estate, it can be restored only by some legal conveyance. This is the necessary, common law doctrine, and was adjudged and acted upon while the estate was considered as transferred to the mortgagee. Oro. Gar. 190. But the mere payment of the money, the discharge of the bond, in any mode, is now said to reinvest the estate. Is there any principle for this or any other instance, in which it was ever heard, that a legal estate in lands could be passed by the mere páyment of a sum of money, without livery and without deed ? Yet such is here the doctrine.
Again. According to the well established rule at this day, a wife cannot have dower in the interest or estate of . the mortgagee. If therefore, dower be not given in the estate of the mortgagor, all lands mortgaged before marriage are freed from this claim. This is then a most easy contrivance to relieve all lands from dower; and it is time for us to expunge the assertion, that dower is favoured in the law. We not only suffer it to be easily ' defeated, but we do not even give it the advantage of curtesy, a right surely not founded in equal reason.
It appears to me that there is no way of extricating ourselves from innumerable absurdities, but by deciding that the interest of the mortgagee is a mere incumbrance or seourity, and that the legal estate remains in the *317 mortgagor; and if so, the consequence follows, that the widow is entitled to her dower. .
And is it not proper, according to the nature of the claim, and the analogy in other cases, that this should be so ? I think it is. The right to dower, is acknowledged on all hands to be one Hounded on high, legal, equitable, and moral considerations, and ought not lightly to be evaded.
It is supposed however, that a strong and conclusive objection to this right, is found in our law books. Let us examine it.
It is said that there has been a long and uninterrupted course of decision, denying dower inlands so situated. 1 remark, 1. There is no such decision in our own state. 2. We receive as binding upon us, only the decisions in England, previous to 1776. And although elementary writers and learned judges assert, that there is there an old and long train of authorities, to the point, yet I confess, in my confined reading, I have not been able to discover, nor were the counsel kind enough to point out, the records of those decisions. I think I am justified in asserting, that the right never was in England, directly decided in that way, until the case of Onslow v. Dixon, in 1783. Coke 208, note 1. Cases said to be analagous, because cases of trusts, had been determined, but this is the first, in which the claim was formally rejected: while a pretty strong though not conclusive expression had been, before made in its favour. 2. P. Wms. 700.
But as we are called on to yield our assent to these decisions, it becomes us to look to their character, and the reasons on which they are founded, and see if they be such as ought to govern us here. And in the first place, it is said in Perkins 153, 7 Bac. 82, and in many other books, that dower was for freeholders’ wives, and therefore widow of mortgagor, should not be endowed. This reason has long since ceased, or the view which I have taken of the situation of the mortgagor, is totally erroneous. Ho is a freeholder.
2. This claim was originally rejected, because the widow of the mortgagee was entitled to her dower and there could not be dower for both. This was so when the *318 mortgagee had the estate; Oro. Car. 190, hut it has ceased be so; she is not now entitled to dower.
g_ All the cases are those of trusts, and the right to dower is disapproved and rejected on the character of the mortgagor’s estate, as a trust. Yet it is now no trust; in its commencement, progress and mode of termination, it is, in no other case, treated as such. Tal. Oa. 138, 139. 3 P. Wms. 229, 234. ■ 1 Eq. Ca. 217. 1 Aik. 604, &c.
*Every reason urged in favour of curtesy is also in favour of dower; and where ever the claim is mentioned, it is approved and its rejection condemned, but the force of authority considered too strong to be resisted. 1 Black. 160. 2 Bl. Com. 337. 3 P. Wms. 229. 2 Vern. 536. Ambler 6. Why then should this court, called now for the first time, to adjudge upon it, follow a doctrine, unfounded in reason, justice, and the relative rights of the parties ; and which its supporters every where condemn ? Stare decisis, is the wise and safe rule, but judges ought not be led, without an authority which cannot be resisted, into the establishment of principles unjust and unreasonable. I see no such authority in this instance.
Did the right of this demandant therefore depend upon the doctrines of the common law, independent of any aid, from the peculiar phraseology of our statute, I should be prepared to adjudge in her favour : but I cannot avoid the impression, that her claim does derive support from the words of the statute. Pat. 343. “ She shall be endowed, of all the lands, tenements and other real estate, whereof her husband, or any other to his use was seized, &c. The words, or any other to his use, are not found in our ordinary definitions on this subject, and must have been inserted for some purpose. What was it? In the argument, two ideas were urged as justifying their insertion. First, that they were designed to accommodate our statute of dower, to the statute of uses: to operate on legal conveyances by which the use was declared and regulated, and which use was executed by the statute. But, it is to be rememnbered that this statute, relative to dower, was passed after that of uses, had been in operation in England, for more than two centuries: and after our own, had governed a great portion of the estates in New-Jersey, for more than *319 eighty years; during which time, the possession was always added to the use, and no doubt ever entertained, that the grantee of the use, was so seized and possessed of the land, that the widow might have dower, as if no use had been created, but the husband had received title, by the oldest and strictest common law mode. If this, therefore was the object, it was, to say the least, a very useless one. It was a very late hour to insert those words for such a purpose.
It was also argued that our statute was different from the 27 II. 8, inasmuch as ours speaks of possession instead of seizin, *in application to the person to whom the use is conveyed; and therefore a doubt might exist as to the right of dower, which it was proper to remove. I never before understood that such doubt had existed, nor do I perceive that there is foundation for it, in the words of the statute. The construction of both, has always, I believe, been the same; and I think necessarily so. The 27 II. 8, says that the person to whom the use is granted, &c. “ shall stand and be seized; deemed and adjudged in lawful seizin and possession, &c.” Ours, that he “ shall be deemed, taken and esteemed to be, in as full and ample possession, &c., to all intents and purposes, as if he were possessed thereof, by solemn livery of seizin and possession, &c.” The object of this statute was to annex the possession to the use, to transfer the use into possession, (a) When therefore the grantor, being seized already of the use, has added to it, the possession, in as full and ample a manner, as if possessed by solemn livery of seizin and possession, I am not aware of any defect in his title; of any addition which could be made to it. In the strongest language, he does “ stand and is seized.” It seems to me, therefore, that an object different from either of these, must have been within the view of the legislature. At the time this statute relative to dower, was passed (1799), it was well understood, that conflicting decisions had been made, respecting the right of dower in mortgaged lands; that curtesy had been granted where it had been denied; and that a course of artificial rea *320 soning, not justified by the real interest of the husband the land, had led to the rejection of the claim of the wife.
As it had been determined that a use was not subject to dower before the statute, nor a trust after it; and as an equity had been likened to a trust, may it not have been the object of making a use dowable, to make a trust and equity so also ? May not these words have been designed to break down this artificial reasoning, and give dower in all cases, both of legal and equitable seizin ; wherever the husband, in truth, owned the land, and the use and profits belonged to him ? The interest of the mortgagor must be either in the seizin or the use ; if he have neither, he has nothing in the land. If he have the seizin, the widow has dower'; if he have the use, and the use is subjected to dower, her claim is good. Now, whatever we may say.about ancient doctrines, or the technical meaning of words, the use and profits of the land *at all times, belong to the mortgagor. While in possession, the use and profits are his, or belong to no one; and if the possession be changed, they go to his benefit, to the extinguishment of his debt; and when that is extinguished, the whole seizin and possession revert to him. , On the other hand, if we say that the mortgagee is seized and to his own use, what can remain to any other? And why shall not his widow have dower ?
In every view, therefore, of this case, I am in favour of the right of the demandant to recover. I think the widow is entitled to dower in the lands mortgaged by her husband before the marriage; that she must take, as the heir and'purchaser take, subject to the mortgage debt. (a) And I am gratified with the knowledge, that in this opinion I am supported by some of the highest and most respectable tribunals in the other states, and in most instances with a perfect unanimity. Con. Rep. 559. 6 John. 290. 7 John. 278. 2 Tuclc. Blac. 131.
I am not ignorant that there is some difficulty in assigning dower in these cases, but that is a subsequent consideration, and one which cannot benefit the defend *321 ant. If the demandant has just claim, it must be sustained. In this case, however, the agreement of the ties, as to the mode and amount of satisfaction, relieves us from all difficulty. ’
Note.—-In this case a writ of error has been brought.
Judgment for the defendant, with costs.

 Hyatt vs. Ackerson, 2 Gr. 566. Harrison vs. Eldridge, 2 Hal. 392. Thompson vs. Boyd, 2 Zab. 543.

 Wanmaker vs. Van Buskirk, Sax. 686. Evans vs. Huffman, 1 Hal. Ch. 354. Hayes vs. Whitall, 2 Beas. 241. Peacock vs. Newbold, 3 Gr. Ch. 61.

 Hillyard vs. Ins. Co. 6 Vr. 415. Le Branthwait vs. Halsey, 4 Hal. 6.

 Souders vs. Vansickle, 3 Hal. 317. Hyatt vs. Ackerson, 2 Gr. 567. Den. vs. Winans, 2 Gr. 1.

 Den vs. Crauford, 3 Hal. 107, 113. See Miller vs. Halsey, 2 Gr. 48. Richman vs. Lippincott, 5 Dutch. 52. Howe vs. Harrington, 3 C. E. Gr. 495.

 Chiswell vs. Morris, 1 McC. 103.